IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jimmie Dale Bryant, ) | Civil Action No.: 4:11-cv-02254-RBH |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Trexler Trucking, Inc., ) | |
| ) | |
|     Defendant. ) | |
| _____) | |

In advance of trial, the parties in the above-captioned case have filed numerous motions and requests for protection. The Court addresses these issues below.

### **Background**

This action arises out a vehicular collision that occurred on April 24, 2009, between Plaintiff and a truck owned and operated by Defendant. Plaintiff filed his Complaint on August 4, 2011, and Defendant filed its Answer on August 24, 2011. Under the scheduling order in the case, discovery was to be completed no later than September 17, 2012, all *Daubert* motions were to be filed by October 15, 2012, and motions in limine, excluding *Daubert* motions, were due by February 7, 2013. [*See* Sched. Order, Doc. # 37; Pre-Trial Sched. Order, Doc. # 64, 65.]

### **Legal Standard**

A district court has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hospitality Group*, 468 Fed. App'x 220, 222 (4th Cir. 2012). Additionally, "[q]uestions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also U.S. v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."); *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 194 (4th Cir. 1982)

(noting that "many details of trial management" are "necessarily committed to broad trial court discretion").

Further, regarding those motions filed untimely under the scheduling order, the Fourth Circuit has explained that after deadlines in the scheduling order have expired, a party must demonstrate "good cause" pursuant to Federal Rule of Civil Procedure 16(b)(4) for filing the belated motion. *See Cook v. Howard*, 484 Fed. App'x 805, 815 (4th Cir. 2012) (affirming a district court's ruling denying a motion to substitute parties filed after the deadline because defendants "ha[d] no one but themselves to blame for the untimeliness"); *Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C.*, 93 Fed. App'x 530, 535 (4th Cir. 2004) (affirming district court's decision to deny motion to exclude expert testimony as untimely, though the district court did limit the expert's testimony to the matters in his report). "Good cause" means that scheduling deadlines could not have been met despite a party's diligent efforts. *See See Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.,* 986 F.Supp. 959, 980 (D.S.C. 1997); 6A Wright, Miller & Kane, Federal Practice and Procedure §1522.1, at 231 (2d ed. 1990).

## Discussion

In light of the applicable legal standards, the Court briefly addresses the various motions filed in this case in turn.

### I.     Plaintiff's 33-Ground Motion in Limine [Doc. # 56]

The Court grants in part, and denies in part, Plaintiff's 33-Ground Motion in Limine [Doc. # 56].

As an initial matter, the Court denies Defendant's request that it dismiss Plaintiff's entire Motion and award Defendant costs and fees in responding to the Motion based upon

Plaintiff's failure to follow the Local Rule requiring a full explanation of the motion. *See* Local Rule 7.04. While Plaintiff's Motion indeed fails to state its grounds with specificity in many respects, the Court has dismissed those grounds as discussed below. Further, Defendant itself flatly violated the Local Rules by filing a fifty-four page Response (with one-hundred and twenty three pages of attachments), well over the allowable limit, without first seeking leave from this Court. *See* Local Rule 7.05.

Defendant has indicated that it has no plans to raise nine of the issues Plaintiff argues should be excluded from use as direct evidence. Thus, given Defendant's Response [Doc. # 76] and for the reasons discussed in the parties' respective filings, the Plaintiff's Motion in Limine is **GRANTED** on those issues, and the following information is excluded from being admitted as direct evidence in the trial of this case: Ground 2: Plaintiff's alleged use of alcohol; Ground 3: Plaintiff's alleged failure to use a seatbelt; Ground 8: Testimony from Defendant's expert witness that Plaintiff may have been coached; Ground 14: U-turn test by Defense witness Michael Sutton; Ground 15: Plaintiff's arrest record; Ground 17: Information regarding payments from a collateral source; Ground 18: Information regarding discounts or other reduction in Plaintiff's medical charges; Ground 19: Attacks on the American civil justice system, plaintiffs' lawyers, or defense lawyers; Ground 20: As to the parties' respective fee arrangements; Ground 32: Effect of claims on insurance rates; and Ground 33: Reference to the filing of the motions in limine in the case.

The Court notes that a number of Plaintiff's requests to exclude operate as little more than an effort to obtain an advisory opinion from this Court. Further, the Plaintiff's requests to exclude seek blanket evidentiary rulings for the course of the entire trial, they concern

evidence that Defendant might use for impeachment, they fail to provide the Court any specific information sought to be offered that would be subject to the requested exclusion, they fail to explain how exactly Defendant might seek to admit this evidence, or they fail to specify any factual or legal basis in support of exclusion. At this time, for these reasons and for the reasons discussed by Defendant in its Response [Doc. # 76], the Court **DENIES** the Motion in Limine *without prejudice* on the following issues, but will allow either party leave to raise such issues at trial when and if they arise: Ground 1: Testimony by Plaintiff's neighbors without personal knowledge; Ground 4: Plaintiff's family court records; Ground 9: Speculative testimony by expert witnesses; Ground 13: Images on Defendant's website; Ground 16: Plaintiff's driving record; Ground 20: As to employment of counsel; Ground 21: Unrelated claims or injuries; Ground 25: Failure to call available witnesses; Ground 26: Testimony of unavailable witnesses; Ground 27: Vouching for defense witnesses; and Ground 29: Hostile witnesses; Ground 30: Plaintiff's use of award; and Ground 31: Reference to the idea that money will not undo damages.

The Court will briefly address the Plaintiff's remaining issues in turn. In Ground 5, Plaintiff seeks to exclude use of Plaintiff's medical treatment records outside of their use by Plaintiff's medical providers and experts who have relied on the medical records. Plaintiff cites no authority for this proposition. As Defendant correctly notes, there are a number of other means by which medical records may be admissible. *See* Fed. R. Evid. 803. It is further unclear how exactly Defendant might seek to otherwise admit this evidence. At this time, the Court **DENIES** the Motion in Limine *without prejudice* as to Ground 5, but will allow Plaintiff leave to raise the issue at trial when and if it arises.

In Ground 6, Plaintiff seeks to exclude testimony from Defendant's expert regarding the condition of the brake lights on Plaintiff's vehicle. Other than a single reference to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), Plaintiff offers no basis for exclusion or any explanation for why it is only now filing such a *Daubert* motion when the deadline to do so expired four months ago. Moreover, this Court has previously denied an extension of the scheduling order in this case, reinforcing its prior order that all *Daubert* motions were to be filed by October 15, 2012. [*See* Doc. # 50.] Given that Plaintiff has failed to show good cause for its late filing, and in the alternative for the reasons discussed by Defendant in its Response [Doc. # 76], the Court **DENIES** the Motion in Limine as to Ground 6.

In Ground 7, Plaintiff seeks to exclude the testimony of medical witnesses as to any resulting limitation, restriction, or physical impairment resulting from Plaintiff's injuries. As Defendant explains, its medical witness does not intend to offer any testimony as to Plaintiff's employability based on factors of education, experience, and the job market. Certainly a medical witness may testify as to limitations, restrictions, and physical impairment, but unless the medical witness is also a vocational expert his opinion as to disability is not proper. Therefore, the Court **GRANTS** the Motion in Limine as to Ground 7, and limits the testimony of Defendant's medical witness to the limitations, restrictions, and physical impairment related to Plaintiff's injuries.

In Ground 10, Plaintiff seeks to exclude the dollar amount of repairs to Plaintiff's vehicle. Defendant is willing to redact the dollar amount from the estimate of repair document, and Plaintiff has not challenged the admissibility of the repair estimate. The Court therefore

**GRANTS** the Motion in Limine as to Ground 10 and Defendant is required to redact the dollar amount from the estimate of repair document.

In Grounds 11 and 12, Plaintiff seeks to exclude the driving/personnel file and inspection reports of the employee who was driving Defendant's vehicle during the accident at issue. Other than merely citing two Rules of Evidence, Plaintiff offers no explanation as to why this information should be excluded. Among other claims, Plaintiff alleges in his Complaint the Defendant failed to properly maintain the vehicle at issue, and failed to train its employee driver. The inspection reports of the truck at issue, and the driving/personnel file of the employee involved in the accident as issue, are highly relevant to the specific allegations of this lawsuit. *See* Fed. Rs. Evid. 401, 403. For this reason, and for the reasons discussed by Defendant in its Response [Doc. # 76], the Court **DENIES** the Motion in Limine as to Grounds 11 and 12.

In Ground 22, Plaintiff seeks to exclude "any reference or suggestion" that Plaintiff was given the name of a physician by his attorney, or that the attorney assisted Plaintiff in scheduling his medical appointment. Plaintiff cites no authority for this proposition. Such information may be relevant, however, to the issue of whether the physician is biased. *See* Fed. R. Evid. 401. The Fourth Circuit has held that a trial judge properly admitted evidence calling a physician's testimony into question, including evidence that the plaintiff was referred to the physician by his attorney and that the attorney had referred numerous clients to the physician. *Wiley v. CSX Tranp., Inc*., No. 90-3177, 1991 WL 188229, at *1 (4th Cir. Sept. 25, 1991). For this reason, and for the reasons discussed by Defendant in its Response [Doc. # 76], the Court

**DENIES** the Motion in Limine *without prejudice* as to Ground 22 because it is unclear as how and through whom Defendant might illicit this evidence.

In Ground 23, Plaintiff seeks to exclude evidence related to the fact that Defendant will have to personally pay any judgment that may be entered in this case. The Court finds that whether Defendant will have to pay any judgment is irrelevant to the claims alleged and will likely confuse the jury, and could possibly open the door to a discussion of liability which would be impermissible under Federal Rule of Evidence 411. *See* Fed. Rs. Evid. 401, 403, 411. The Court therefore **GRANTS** the Motion in Limine as to Ground 23.

In Ground 24, Plaintiff seeks to exclude reference that damages claimed or recovered by Plaintiff may be subject to taxation as irrelevant. Defendant argues that it may, on cross examination, ask questions regarding the taxation of Plaintiff's lost wages. However, in this diversity action, the substantive law of the state of South Carolina governs. *See Hill v. USA Truck, Inc*., No. 8:06-CV-1010, 2007 WL 1574545, at *11 (D.S.C. May 30, 2007) (applying South Carolina law regarding tax implications in diversity case); *Hansen v. Johns-Manville Products Corp*., 734 F.2d 1036, 1045 (5th Cir.1984) (holding that when a claim for damages is brought under Texas law, Texas law determines whether taxability instruction is warranted). The South Carolina Supreme Court has held that "a jury instruction on income tax consequences" is prohibited. *Giannini v. South Carolina Dept. of Transp*., 378 S.C. 573, 582–83, 664 S.E.2d 450, 455 (2008). If such a jury instruction is prohibited under the applicable law of the case, then it logically follows that it would be misleading or confusing to allow the jury to hear information regarding income tax consequences. The Court therefore **GRANTS** the Motion in Limine as to Ground 24.

In Ground 28, Plaintiff seeks exclusion of the personal belief of counsel regarding witness credibility and the merits of Plaintiff's case. The Court agrees that the case is about the parties' conduct and not the lawyers' opinions. The litigants should keep their arguments focused on the parties to this action. Thus, the Court **GRANTS** the Motion in Limine as to Ground 28.

**IT IS SO ORDERED.**

## II.      Defendant's Motion in Limine to Exclude Plaintiff's Expert Testimony [Doc. # 58]

The Court denies Defendant's Motion in Limine to Exclude Testimony by Plaintiff's Expert [Doc. # 58]. Specifically, Defendant seeks to exclude Plaintiff's expert, Woodrow M Poplin, from testifying as to human factors, specifically when Plaintiff "perceived" Defendant's tractor trailer as a threat. They do not object to Mr. Poplin's testimony as an engineer and accident reconstructionist.

Although couched as a motion in limine, Defendant's Motion is plainly one made pursuant to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). [*See* Mot., Doc. # 58, at 7–10.] However, Defendant filed its Motion on January 22, 2013, more than three months after the deadline for filing *Daubert* motions had expired, and Defendant has failed to show any good cause for its late filing. First, Defendant cites to Mr. Poplin's report, which was filed on February 23, 2012, eight months before the filing deadline. [*See* Pl.'s Expert Report, Doc. # 31.] Further, Mr. Poplin's deposition was conducted a day later, on February 24, 2012. [See Mot., Doc. # 58, at 4.] Yet Defendant waited nearly a year to seek exclusion of portions of Mr. Poplin's testimony.

Second, in September 2012, Defendant filed a twenty-six-page opposition to Plaintiff's request to amend the scheduling order to add a human factors expert, and received a favorable ruling by this Court. [*See* Docs. # 40, 41.] In that opposition, Defendant specifically attacked Plaintiff's request as untimely, and quoted the very portions of Mr. Poplin's testimony it now challenges. Yet, even though Defendant had plainly culled through Mr. Poplin's testimony by its September 2012 response, it nonetheless waited an additional four months to file a *Daubert* motion related to those issues.

Third, Defendant's delayed request for exclusion is particularly egregious in light of Defendant arguing in September 2012 that Plaintiff did not need a human factors expert because Mr. Poplin's testimony on human factors was sufficient. In Defendant's words:

> Plaintiff's own expert was the first to raise [human factors] issues as far back as February 21, 2012. Furthermore, there is essentially no difference in the "human factors" analysis and testimony rendered by both parties' accident reconstructionists with the exception that they disagree on the conclusions. *There is no reason Mr. Poplin cannot now be utilized by Plaintiff* to rebut Mr. Sutton's testimony which was rendered only in response to Mr. Poplin's report and testimony.

[Doc. # 41, at 16.] Yet now, months after the deadline to file a *Daubert* motion, Defendant has suddenly found a reason.[1] To now exclude portions of Mr. Poplin's testimony would prejudice Plaintiff.

As Defendant itself has twice quoted, "[A] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly discarded by counsel without peril." *Mainfreight USA Partnership v. Marco*, No. CIV.A. 0:09-563-JFA, 2010 WL 1071730 (D.S.C. March 18,

---

[1] Defendant's shift can be charitably described as an unexpected and belated change in course. At worse, it would appear that Defendant misrepresented its approval of Mr. Poplin's human factors experience in order to help secure a more favorable ruling from the Court at the time.

9

2010) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). [*See also* Doc. # 41, at 18; Doc. # 70, at 3.] The scheduling order is there for a reason, including not forcing last-minute *Daubert* motions and hearings upon the Court. *See Alfred v. Caterpillar, Inc*., 262 F.3d 1083, 1087 (10th Cir. 2003) (explaining that "because *Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction," untimely *Daubert* motions should be considered "only in rare circumstances"); *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1349–50 (11th Cir. 2003) (affirming denial *Daubert* motion, in part, as untimely when it was filed after the scheduling order deadline and before trial); *United States v. Rinchack*, 820 F.2d 1557, 1564 (11th Cir. 1987) ("A trial court is not required to grant an eleventh hour request for [expert services] 3006A(e) . . ., particularly where the delay in making the request is unjustified and would require a continuance of the hearing and/or trial.").

**IT IS THEREFORE ORDERED** that for the above reasons, and in the alternative for the reasons discussed by Plaintiff in its Response [Doc. # 72],[2] Defendant's Motion in Limine to Exclude Testimony by Plaintiff's Expert Mr. Poplin [Doc. # 58] is **DENIED**.

**IT IS SO ORDERED.**

---

[2] Plaintiff's Response [Doc. # 72] notes that Mr. Poplin does in fact have specialized education, training, or expertise in the field of human factors, as Mr. Poplin's current curriculum vitae list several courses related to human factors in the field of accident reconstruction, including "Human Factors for Traffic Accident Reconstruction" and "State of the Art in Reconstruction - Human Factor Issues; Low Speed Impact Testing; Physical Evidence Issues; Expert Witness Issues." *See also Benoit v. Westport Ins. Corp*., No. 07–1109, 2009 WL 2970429 at *3 n. 3 (W.D. La. Aug. 21, 2009) ("Although plaintiff's counsel objected that Mr. Tekell is not a "human factors" expert, Mr. Tekell explained that some human factors analysis is necessarily implicated in accident reconstruction. . . . I accept Mr. Tekell's explanation. Obviously accident reconstruction experts regularly testify, for example, as to a person's expected reaction time."); *Castaldi v. Land Rover North Am.*, No. 06–CV–1008, 2007 WL 4165283 at *7 (E.D.N.Y. Nov. 21, 2007) ("[H]uman factors is itself a fairly narrow specialty within the field of vehicle accident reconstruction").

### III.     Plaintiff's Supplemental Motion in Limine [Doc. # 69]

The Court grants in part, and denies in part, Plaintiff's Supplemental Motion in Limine [Doc. # 69]. In its Motion, Plaintiff seeks exclude (1) reference to Luke Rankin as a state senator; (2) the recent association of attorneys Utsey and Henderson; and (3) the identity of the questioner when publishing deposition excerpts.

Defendant has indicated in its Response [Doc. # 75] that it has no objection to the exclusion of the first two grounds raised by Plaintiff. Thus, that information is excluded.

As to Plaintiff's request to exclude the identity of the questioner when publishing deposition excerpts, Plaintiff cites no authority in support of this proposition. In fact, the Federal Rules of Evidence contain no prohibition against identifying the person raising a question when publishing deposition excerpts. This information further reduces jury confusion and provides the fact finder with necessary context when listening to a deposition excerpt. *See* Fed. Rs. Evid. 401, 403. For these reasons and the reasons discussed in Defendant's Response [Doc. # 75], Plaintiff's Motion is denied as to this ground.

**IT IS THEREFORE ORDERED** that Plaintiff's Supplemental Motion in Limine [Doc. # 69] is **GRANTED** as to the following:

(1) reference to Luke Rankin as a state senator is excluded; and

(2) reference to the recent association of attorneys Utsey and Henderson is excluded.

All other ground for relief are **DENIED**.

**IT IS SO ORDERED.**

**IV.     Defendant's Motion in Limine to Exclude Simulation and Witnesses [Doc. # 70]**

The Court grants Defendant's Motion in Limine to Exclude Certain Witnesses and an Accident Simulation CD [Doc. # 70]. Specifically, Defendant's Motion seeks to exclude (1) the testimony of Mike Maddox; (2) the contents of a CD entitled "WISAT TESTING," which includes simulation and animation of Defendant's purported turn sequence during the accident; and (3) the testimony of Bill Williams, the creator of the CD.

Regarding Mike Maddox, Plaintiff indicates it has no plans to call Mr. Maddox as the Court previously denied Plaintiff's belated request to disclose Mr. Maddox as an expert witness. For this reason and the reasons stated by Defendant in its Motion in Limine [Doc. # 70], the Court excludes the testimony of Mike Maddox.

Regarding the WISAT TESTING CD, the Court finds that the CD should be excluded.

First, the CD was disclosed late and that this untimely disclosure is neither substantially justified or harmless.[3] As Plaintiff himself fully admits, the CD was produced "23 days after

---

[3] Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by [the Federal Rules], the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." "[T]he basic purpose of Rule 37(c) (1) [is] preventing surprise and prejudice to the opposing party." *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Thus, the district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. *Id.* at 597.

[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* (Holding that the first four factors "relate mainly to the harmlessness exception, while the remaining factor . . . relates primarily to the substantial justification exception.").

the discovery deadline expired." Although Defendant has had the CD in his possession for several months now, it was delivered only after discovery, and thus after Defendant's opportunity under the scheduling order to cure any defect from that late disclosure by way of conducting depositions of its creator, exchanging in further discovery regarding the CD's contents, or having their own experts view the CD and prepare amended reports. The evidence would also disrupt the trial as the Court would essentially be called upon to conduct a mini-trial regarding the CD's creation and history. Additionally, this evidence is not particularly critical to Plaintiff's case. The CD is meant to provide a visual demonstration of the testimony of a lay witness who did not observe the accident. Moreover, Plaintiff has an expert, who did not create the CD or rely on it for his expert reports, who can testify as to the accident at issue. Lastly, while Plaintiff discussed the possible existence of a simulation before, the only reasons given for its late disclosure was that Plaintiff was on a vacation and did not ultimately receive the CD until after discovery. [Resp. Doc. # 74, at 7.] However, Plaintiff never sought leave to disclose this material outside the scheduling order.

Second, even if the CD had been timely disclosed, it would be inadmissible.[4]

---

[4] "[T]he requirement of authenticating or identifying an item of evidence . . . [is satisfied] by evidence sufficient to support a finding that the matter in question is what the proponent claims it is." F. R. Evid. 901(a) "Thus, a party may authenticate a video animation by offering testimony from a witness familiar with the preparation of the animation and the data on which it is based." *Clark v. Cantrell*, 339 S.C. 369, 386, 529 S.E.2d 528, 536 (2000). These witnesses typically include "the testimony of the expert who prepared the underlying data and the computer technician who used that data to create [the animation]." *Id*.

Additionally, "[a] computer-generated video animation is admissible as demonstrative evidence when the proponent shows the animation is authentic, relevant, far, and accurate representation of the evidence to which it relates, and its probative value substantially outweighs the danger of unfair prejudice, confusing the issues, or misleading the jury." 1 eDiscovery & Digital Evidence § 14:5 (citing *Clark*, 339 S.C. at 386, 529 S.E.2d at 537); *see also Strock v. Southern Farm Bureau Cas. Ins. Co.*, No. 92-2357, 1993 WL 279069 (4th Cir.

13

One, the creator of the CD and its contents is a lay witness. Plaintiff concedes that it seeks to offer the CD through, and as a part of, the testimony of a lay witness who produced the CD, which includes simulations and animations which purport to mimic the turns performed by Defendant's driver on the day of the accident. [Resp., Doc. # 64, at 2–3.] The Fourth Circuit has found that a lay witness cannot testify to such information. *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204 (4th Cir. 2000) (holding that a district court abused its discretion when it admitted the testimony of a non-expert witness "who did not have any first-hand knowledge of the accident . . . . [The witness's] sole basis of knowledge concerning the accident derived from his investigation and his analysis of the data he collected. He did not see the accident; nor did he have personal knowledge of the vessel's location, the bottom conditions of that location, or the wind, wave, and current conditions at the time of the accident. As a lay, not expert, witness, he lacked the personal knowledge necessary to express the opinions that he did."). If a lay witness cannot testify about how an accident occurred when he never observed the accident at issue, it logically follows that a CD demonstrating the lay witness's opinions is similarly inappropriate. *See Strock v. Southern Farm Bureau Cas. Ins. Co.*, No. 92-2357, 1993 WL 279069 (4th Cir. July 12, 1993) (allowing a computer simulation *offered by an expert* witness); *Chase v. General Motors Corp.*, 856 F.2d 17, 19 (4th Cir. 1988)

---

July 12, 1993) ("The court declines to create a rigid standard for the admissibility of computer animated videotape simulations at this time. Rather, this court chooses to rely on the sound discretion of trial judges who are in the best position to consider the relevancy of offered evidence and to weigh its probative value against its potential prejudicial effect."); *Chase v. General Motors Corp.*, 856 F.2d 17, 19 (4th Cir. 1988) (holding that videotape of braking tests performed by plaintiffs' expert should have been excluded because conditions of the tests were dissimilar to conditions existing at time of accident).

(examining videotape of braking tests offered by an *expert witness*); *Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528, 536 (2000) (discussing an animation that was authenticated, in part, by the testimony of *the expert who prepared the underlying data*).

Two, Plaintiff's own expert casts serious doubts on the reliability of the CD. According to the expert's report, "[t]he sequence and timing of [Defendant's] turn cannot be completely evaluated from the physical evidence." [Pl.'s Expert Report, Doc. # 31-1, at 7.] If Plaintiff's own expert witness cannot "completely evaluate" the timing and sequence of Defendant's u-turn in the subject accident, any effort by a lay witness to do just that via a computer animation creates a significant reliability problem. Moreover, to the extent any relevance and probative value can be gleaned from the CD in light of these flaws, this value would be outweighed by the likelihood that the CD's contents would confuse the jury and cause them to give greater weight to the opinion of a non-expert. *See* Fed. R. Evid. 403. The Court therefore excludes the WISAT TESTING CD.

Regarding the testimony of Bill Williams, the lay witness who created the CD and performed the exemplar turns that formed the basis for the CD's simulations, this Court incorporates its discussion above and holds that Mr. Williams is excluded from testifying about the CD or any information outside of his personal knowledge. *See, e.g.*, *Shelley v. White*, No. 1:09cv–00662, 2010 WL 1904280, at *1 (M.D. Ala. May 10, 2010) (holding that warehouse supervisor's opinions concerning whether a driver could have moved a truck was not something that a lay witness would readily understand, but was based on specialized knowledge, including knowledge of safety procedures and the truck at issue).

However, the Motion in Limine and Response are unclear as to what other reason, if any, Plaintiff may call Mr. Williams to testify. Thus, the Court grants the Motion in Limine to the extent it seeks to exclude Mr. Williams from testifying regarding the CD and any information outside Mr. Williams' personal knowledge.

**IT IS THEREFORE ORDERED** that Defendant's Motion in Limine to Exclude Certain Witnesses and an Accident Simulation CD [Doc. # 70] is **GRANTED** as follows:

(1) the testimony of Mike Maddox is excluded;

(2) the WISAT TESTING CD and any references to its existence are excluded; and

(3) Bill Williams is excluded from testifying about the WISAT TESTING CD or any information outside of his personal knowledge. Plaintiff may proffer Mr. Williams if he believes his lay testimony may be used for some other reason. However, the parties are ordered to refrain from referencing Mr. Williams or any potential testimony he may offer until after Plaintiff proffers Mr. Williams outside the presence of the jury.

**IT IS SO ORDERED**.

## V.     Defendant's Motion for a Protective Order [Doc. # 79]

The Court denies Defendant's Motion for a Protective Order [Doc. # 79], seeking to exclude a draft expert report produced to Plaintiff during a recent deposition.

Defendant invokes Federal Rule of Civil Procedure 26(b)(4)(B), which protects draft expert reports from disclosure. However, Plaintiff is not seeking discover a draft expert report, Defendant has already produced one. Thus, the Court denies Defendant's Motion as discussed below.

**IT IS THEREFORE ORDERED** that Defendant's Motion for a Protective Order [Doc. # 79] is **DENIED**, *without prejudice* to Defendant's right to object to the admission of the report or its contents at trial on other grounds that may exist under the Federal Rules.

## VI.     The Parties' Various Requests for Protection

The parties in the above-captioned case have filed, at various times, numerous requests for protection. This Court has carefully reviewed these requests and will only grant protection for those dates during which counsel have previously scheduled vacations. Counsel will have to make other arrangements, including testimony by deposition, should the trial conflict with any other dates. Protection is hereby granted only for the previously scheduled vacation of Plaintiff's counsel, March 4–8.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
February 21, 2013